**Petition of Joseph COHEN.**
No. 63–C–410.

United States District Court
E. D. New York.
May 13, 1963.

John L. Sullivan, Legal Aid Soc. of New York, New York City, for petitioner.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for respondent.

Raoul L. Felder, Asst. U. S. Atty., of counsel.

ZAVATT, Chief Judge.

The petitioner has filed what he designates to be a "Motion for an order to vacate, set aside or correct" the sentences which this court imposed on May 19, 1960, in cases numbered 60–CR–7 and 60–CR–77. The court appointed John L. Sullivan of the Legal Aid Society of New York to represent the petitioner and a hearing was held on April 22, 1963. He moves pursuant to 28 U.S.C. § 2255 and Rule 35, Fed.R.Crim.P. More than sixty (60) days having elapsed since the sentences were imposed, the court may not reduce the sentences in its discretion. But it may correct the sentences at any time if they are illegal.[1] His motion pursuant to 28 U.S.C. § 2255 is timely but may be granted only if the sentences were "imposed in violation of the Constitution or laws of the United States, or [that] the court was without jurisdiction to impose such sentence, or [that] the sentence was in excess of the maximum authorized by law, or [is] otherwise subject to collateral attack, * *." 28 U.S.C. § 2255.

Petitioner does not contend that the court lacked jurisdiction to impose the sentences or that they were in excess of the maximum authorized by law. In fact, petitioner on March 24, 1960, pleaded guilty to two counts of a six count indictment in 60–CR–7 charging him with violations of 18 U.S.C. § 2314 which authorizes a maximum sentence of ten (10) years on each count and a maximum fine of $10,000 on each count. He was sentenced on May 19, 1960, to a term of

1. "Rule 35. Correction or Reduction of Sentence
  "The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the Supreme Court denying an application for a writ of certiorari."

seven (7) years on each such count to run concurrently and was so sentenced pursuant to 18 U.S.C. § 4208(a) (2) thus authorizing the Board of Parole to release him at any time in its discretion. He pleaded guilty on May 19, 1960, to one count of a three count indictment against him in 60–CR–77 charging him with violations of 18 U.S.C. § 2312, which authorizes for that offense a maximum term of five (5) years and a maximum fine of $5,000. On May 19, 1960, he was sentenced to a term of three (3) years to run concurrently with the sentences imposed in 60–CR–7 and pursuant to 18 U.S.C. § 4208(a) (2). Whereas the total maximum sentences which the court was authorized to impose aggregated twenty-five (25) years and fines of $25,000, petitioner was sentenced to serve a maximum of seven (7) years. No fine was imposed.

The petitioner complains of the fact that a codefendant, Frank Herman Levine, pleaded guilty to the same counts of said two indictments on October 3, 1960, before another judge of this court approximately five (5) months after sentences were imposed upon petitioner and was sentenced by Judge Bruchhausen of this court on November 25, 1960 to terms of six (6) years in 60–CR–7 (to run concurrently) and a term of five (5) years in 60–CR–77 to run concurrently with the sentences in 60–CR–7. It is not clear from the petitioner whether he claims that these comparative sentences were so disparate as to entitle him to relief under either Rule 35, Fed.R.Crim.P. or 28 U.S.C. § 2255. The court has examined the records with reference to the co-defendant Levine and finds that Levine made a timely motion for reduction of his sentences and that on January 31, 1961, Judge Bruchhausen granted that motion to the extent of reducing Levine's sentences in 60–CR–7 from six (6) years to four (4) years, to run concurrently and to the extent of reducing the sentence imposed in 60–CR–77 from five (5) years to four (4) years, to run concurrently with those imposed in 60–CR–7.

The disparity in the sentences imposed by this court on May 19, 1960, and those reduced sentences imposed by Judge Bruchhausen on January 31, 1961, would appear to be the gravamen of petitioner's complaints. He alleges that he and Levine were "of equal guilt"; that he was "a first offender"; that "the district judge * * * gave less of a sentence to a co-defendant of equal guilt who was a second offender"; that "the district judge arbitrarily, and without justification singled out the petitioner for this harsh and severe punishment." Although the petition alleges that petitioner "had no prior Federal conviction" it omits a conviction for petty larceny (reduced from a charge of grand larceny) in the County Court of Kings County, New York, in December of 1954.

The presentence report, which was studied carefully before sentences were imposed upon the petitioner, reveals an unsavory character involved in criminal schemes in order to make easy money. At ages 22 to 27 while in the military service (July 29, 1941 to August 17, 1945) he received two (2) Special Courts Martial and two (2) Summary Courts Martial for being AWOL over a total period of 1,127 days. He received a discharge other than honorable for desertion and physical unfitness for military service—the latter because of what the presentence report describes as "a constitutional psychopathic state, emotional immaturity." He appears to have "skirted the fringes of illegal activities for many years", was engaged in a sophisticated fraud scheme with Levine and had no verifiable legitimate employment since December 1958. He was discharged by U. S. Plywood Corp. (for whom he worked as a truck driver from 1948 to September 1953) "for stealing from employer." When questioned by an officer of our Probation Department as to how he supported himself and his invalid wife in an apartment "well furnished in excellent taste" "in an upper middle class section of Queens", he claimed "to have been living on savings". Yet his "only acknowledged resources

were $200 in Government Bonds and approximately $300 in a savings account". "Defendant's wife corroborated these statements" as to his acknowledged resources.

Petitioner has been involved with others in the theft of Cadillac automobiles, their sale to individuals and a scheme under which these cars would then be "stolen" from the purchaser and false insurance theft claims filed. In one known instance in May 1958 the petitioner and two co-defendants, Levine and Malachowsky, embarked upon a scheme with reference to a Cadillac automobile registered in petitioner's name. Levine and Malachowsky were to "steal" petitioner's car so that he could file a fraudulent insurance theft claim. Apparently, the petitioner was overanxious; for he filed the claim before the "theft" and none of the conspirators were aware of the fact that they were under surveillance at the very time when Levine and Malachowsky purported to steal the car.

In 60-CR-77, the petitioner, Levine, Malachowsky and others were indicted in a four count indictment as follows:

Count 1—Malachowsky charged with knowingly transporting a 1958 stolen Cadillac convertible from Washington, D. C. to Brooklyn, New York, on August 13, 1958.

Count 2—Petitioner, Levine, Malachowsky and another charged with knowingly transporting a 1957 Cadillac coupe from Washington, D. C. to Queens County, New York, on May 6, 1958.

Count 3—Petitioner, Levine, Malachowsky and another charged with knowingly transporting a 1958 Cadillac sedan from Queens County, New York to West New York, New Jersey, on November 3, 1958.

Count 4—Levine, Cohen, Malachowsky and others charged with conspiracy to transport stolen motor vehicles in interstate commerce.

Petitioner and Levine were arrested on December 29, 1958, on these charges. They were indicted on March 3, 1960. It was to Count Three of this indictment that petitioner pleaded guilty before me on May 19, 1960.

After petitioner and Levine had been arrested for the charges later made in indictment 60-CR-77, they embarked upon another scheme—an imaginative, bold, professional confidence game in which they used The Pentagon as a means of defrauding their victims. In October of 1959 they represented to a wholesale locksmith that they had access to 9,000 new locks and several trucks—military surplus items—and offered them for sale to him for $13,000. The wholesaler called in a friend to become a co-purchaser and between them they paid a deposit of $4,000. Later that month, petitioner and Levine took the victims to Washington, D. C. via commercial airplane and to The Pentagon, where the victims were to meet petitioner's and Levine's "contact". No "contact" appeared at The Pentagon. But after petitioner and Levine separated briefly from the victims in The Pentagon they returned with genuine receipt forms falsely filled out to show that petitioner and Levine had made a deposit to purchase the locks and trucks from the United States Government. Convinced of the bona fides of petitioner and Levine and of the availability of the merchandise, the victims there and then paid to the two schemers the balance of $9,000. Thereupon, the petitioner, Levine and the two unsuspecting victims returned by plane to New York. A few days thereafter, petitioner and Levine delivered to the victims a false bill of lading dated October 26, 1959, which purported to indicate that the 9,000 locks and two trucks were enroute from Columbus, Georgia to Brooklyn, New York via the Hague Transfer Company. The goods

were never delivered. In fact they never existed. In 60–CR–7 the petitioner and Levine were indicted for this scheme in a six count indictment as follows:

Count 1—For devising a scheme to obtain money by false and fraudulent pretenses and inducing one of the purchasers to be transported in interstate commerce from New York State to Virginia, in violation of 18 U.S.C. § 2314.

Count 2—For devising the same scheme and inducing the other purchaser to be similarly transported, in violation of 18 U.S.C. § 2314.

Count 3—For transporting $9,000 in interstate commerce knowing it to have been taken by fraud from the two purchasers, in violation of 18 U.S.C. § 2314.

Count 4—For knowingly, wilfully and unlawfully making the false and forged bill of lading purporting to represent goods received for shipment in commerce with intent to defraud the two purchasers, in violation of 49 U.S.C. § 121.

Count 5—For knowingly, wilfully and unlawfully and with intent to defraud the two purchasers uttering and publishing said bill of lading as true and genuine, knowing the same to have been falsely made and forged, in violation of 49 U.S.C. § 121.

Count 6—For conspiring to devise and execute the scheme to defraud the two purchasers; to cause them to travel in interstate commerce and to transport in interstate commerce money in excess of $5,000 knowing it to have been taken by fraud, in violation of 18 U.S.C. § 371.

On May 19, 1960, petitioner pleaded guilty to Counts One and Three, the maximum penalty for each of which offenses is a term of ten (10) years or a $10,000 fine or both.

Levine, petitioner's co-defendant, had a longer prior record than petitioner. In 1955 he was sentenced in the United States District Court for the Southern District of New York to a term of five (5) years for interstate auto theft and to six (6) years for interstate transportation of forged checks—both sentences to run concurrently. His petition for a reduction of sentences was granted and these sentences were reduced to three (3) years. He was released on December 20, 1956 and in 1958 was sentenced to a term of two (2) years by the County Court of Bergen County, New Jersey, on a check charge, but sentence was suspended and he was placed on probation for five (5) years. At the time he was sentenced in 60–CR–7 and 60–CR–77 a violation warrant had been issued for violation of his probation in the Bergen County case, there was pending in the office of the United States Attorney for the Eastern District of New York a charge of interstate transportation of stolen money orders and there was pending a sentence to be imposed by the Special Sessions Court, Brooklyn, New York, for the crime of forgery to which he had pleaded guilty. Thus, when he was sentenced by Judge Bruchhausen in 60–CR–7 and 60–CR–77 Levine, then age 44, faced the certainty of serving his Bergen County Court two (2) year sentence, the prospects of a jail sentence in the Special Sessions Court as well as an indictment, conviction and sentence in this court for the interstate transportation of stolen money orders.

Although the presentence report supports the conclusion that he was an inveterate, heavy gambler who lived "high" and was able to do so only by resorting to dishonest activities, he was

well oriented, of average intelligence, with an honorable record in the United States Army and an honorable discharge because of physical disability, with no indications of mental abnormality and willing to take his punishment.

Under such circumstances, it is understandable that he received straight sentences aggregating no more than six (6) years to run concurrently. Cohen, on the other hand, though "equally guilty" was unstable, in need of and possibly capable of rehabilitation, with no detainers filed and no other criminal charges pending against him. Only the watchful eyes of the Bureau of Prisons and of the Board of Parole could determine over what period of incarceration his rehabilitation could be accomplished. His crimes were cold, bold, deliberate and premeditated. In his case, I felt that they deserved concurrent sentences of seven (7) years but sentenced him under 18 U.S.C. § 4208(a) (2) in order to authorize his release by the Board of Parole in its discretion.

Cohen did not move for a reduction of his sentences nor did he seek any relief after Levine was sentenced in October 1960. Nor did he seek any relief after Levine's sentences were reduced in December 1960, until his present motion dated April 4, 1963.

■ The only authority cited by petitioner in support of his motion is United States v. Wiley, 278 F.2d 500 (7th Cir. 1960). In that case the Court of Appeals departed from the general rule of not reviewing on appeal sentences within the maximum authorized by law. The alleged disparity of sentences of the petitioner and Levine could not have been reviewed on appeal, since the alleged disparity did not come into being until November 25, 1960, when Levine was sentenced, at which time the petitioner's time to appeal had elapsed. Rule 37, Fed.R.Crim.P. In any event, in this Circuit disparity of sentences is not reviewable on appeal. United States v. Vita, 209 F.Supp. 172, 173 (E.D.N.Y. 1962). See United States v. Rosenberg,

195 F.2d 583, 604–607 (2d Cir. 1952), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 687 (1952). The court will consider petitioner's motion on the merits.

■ In Wiley, supra, the Court of Appeals set aside the sentence and remanded the case to the District Court with directions to reduce the sentence, not upon the ground of disparity in sentence between Wiley and his co-defendant, but, rather, because of the fact that the District Court in sentencing Wiley gave him a harsher sentence because he had pleaded not guilty and demanded a trial, whereas his co-defendants had pleaded guilty. See 109 U.Pa.Law Rev. 422 (1961). The narrow scope of the Wiley decision is indicated by a prior decision of the Court of Appeals of the Seventh Circuit in United States v. De Marie, 261 F.2d 477 (7th Cir.1958), in which the court refused to review petitioner's contention on a Section 2255 motion that his rights were violated when he received a sentence of ten years whereas a co-defendant had received a sentence of only two years. This case is not mentioned in the Wiley opinion. It would appear to be good law in the Seventh Circuit in the absence of the special circumstances present in Wiley, supra. In the instant case the petitioner, unlike Wiley, pleaded guilty whereas Wiley pleaded not guilty and went to trial. The petitioner's sentence, therefore, cannot reflect a harsher sentence because of a plea of not guilty. In Wiley, supra, the defendant was finally sentenced some time after his co-defendants and it is from that final sentence that he appealed in 278 F.2d 500. Here the petitioner was sentenced almost six months before his co-defendants and the sentences imposed upon the petitioner and his co-defendant Levine were imposed by different judges whereas in Wiley, supra, the sentences were imposed upon all the defendants by the same judge.

A somewhat comparable case was before this court in United States v. Vita, supra. There, the petitioner moved un-

der 28 U.S.C. § 2255[2] and contended that, by receiving a fifteen year sentence while a co-defendant received only a six year sentence, he had been denied the equal protection of the laws under the Fourteenth Amendment to the Constitution. By implication, he also claimed that he had been subjected to cruel and inhuman punishment in violation of the Eighth Amendment to the Constitution. After pointing out that the Fourteenth Amendment is not applicable to a Section 2255 proceeding, the court treated the allegations of the petition as setting forth a claim of a violation of due process of law under the Fifth Amendment and stated:

"Due process and equal protection of the law, of course, do not mean equal sentences in criminal cases.

\* \* \* \* \*

"There is no requirement under the due process clause or any other clause of the Constitution which imposes a mandate upon the Court to render uniform sentences against criminal defendants. Otherwise the imposition of sentences would be an inflexible mechanical operation without any humanitarian or social consideration rather than an effort to make the punishment fit not only the crime but also the character and needs of the individual and the requirements of the community. In reaching its conclusion the Court was compelled to weigh the time needed for the rehabilitation of this particular defendant and the necessity for a deterrent as well as the demands of the community for protection. In United States v. Litterio, D.C.Tex., 1957, 153 F. Supp. 329, aff'd, 5 Cir., 244 F.2d 956, cert. denied, 355 U.S. 849, 78 S.Ct. 75, 2 L.Ed.2d 58, and in How-

ard v. Fleming, 1903, 191 U.S. 126, 24 S.Ct. 49, 48 L.Ed. 121, similar assaults have been made against sentences because of a disparity in terms imposed upon co-defendants, without success.

"There is no merit in Vita's claim concerning cruel and inhuman treatment because the statute itself permits the imposition of a maximum of twenty-five years penalty for the commission of the crime; it would be rather late in the day for this Court to attempt to find this statute unconstitutional." (209 F.Supp. at 173–174).

The foregoing constitutes the court's findings of fact and conclusions of law. Petitioner's motion is denied.

2. 28 U.S.C. § 2255
"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."